We have one case this morning, but before we start, I have an admission. Cassie. So, it's always sad when my clerk's year is ending and they have to move on, but I'm always excited to see them move on and either start or go back to their career and see what they do. And it's been a great year with Cassie. I hope she's had a good time and has learned as much from the clerkship as all of her predecessors have. She's been great and has done a really good job helping me get ready for argument and writing opinions and the like. So, with that said, I move the admission of Catherine Gorash, who is a member of the Bar and is in good standing with the highest courts of Pennsylvania and the District of Columbia. I have knowledge of her credentials and I'm satisfied that she possesses the necessary qualifications. I think that sounds like a fantastic motion. What do you think? The papers all appear to be in order and the motion was well made orally, so I too would grant the motion. Welcome. Mr. McComber, when you're ready. You have reserved five minutes for rebuttal. Yes, please. Good morning. May it please the Court, my name is Michael McComber. I represent the appellant in this matter, Susan Hiller. I have two issues I just want to address right off the bat. First, I'd like to thank the Court and specifically Mr. Laufgraben for their understanding and granting the adjournment to attend to a family emergency. I greatly appreciate that and I greatly appreciate opposing counsel's consent. The other issue is more directly on this case. A couple days ago it came to my attention of a precedential decision that just came down from this Court about ten days ago. The Sharpe v. Department of Justice case. I provided a copy to Mr. Laufgraben last night as I was going through it. I have copies for the Court's consideration today and am happy to brief the issue or discuss it. I'd say it's a very short decision if you'd like to consider it. Why don't you submit it with a Rule 28J letter, which is consistent with our rules. I think we can find the decision ourselves too if you just want to give us the site. Certainly. I only found it on Lexis, but it's 2019. U.S. Appellate Lexis, 6279. And I do have copies. It's Sharpe v. Department of Justice. Sharpe v. Department of Justice. It came down on March 1st. Okay, thank you. There's three issues before the Court this morning. Whether or not the administrative judge abuses discretion in denying Ms. Hiller the opportunity to present witnesses during her hearing as well as whether the administrative judge abuses discretion in denying her continuance to present witnesses in her pre-hearing submissions during the proceedings below. The third issue is whether the administrative judge erred in finding that the respondent, the agency established by clear and convincing evidence, its affirmative defense, that it would have taken the same action. With respect to the first argument there, the facts of this case are pretty clear. The case had been put on a case suspension back in May of 2015, May 12, 2015, at which point in time the administrative judge did not issue his pre-hearing order until five days before the pre-hearing submissions were due. Ms. Hiller, pro se at that time, was not understanding what was involved in the pre-hearing submissions and immediately filed a motion for a continuance that same day. In her motion she set forth good cause, why she needed an extension of time to prepare her pre-hearing submissions. What was her good cause? Her good cause consisted of, I believe there was four different things. One being that she needed additional time to go through thousands of pages of documents that the agency had dumped on her a couple of days prior. Two, that she was looking to retain counsel to assist her in the pre-hearing submissions as she did not understand what was involved. Three, that the pre-hearing submission or the pre-hearing order from the administrative judge had come down five days before the pre-hearing submissions were due. And four, she was currently out of state at the time when she previously notified the court about back during an earlier status conference, which led to the case suspension there. All four of those issues were ignored by the administrative judge. Let me ask you one question, because I understand that the order was May 12, 17, suspending proceedings, and then you have the order that the judge issues, I guess, on July 19, correct? I believe so. During that period, I gather from what you just said, the parties were engaged in discovery? Yes, Your Honor. Between middle of May and middle of basically that two-month period there? Yes, the case I believe had been put on case suspension, and there was a prior motion to compel filed with regards to document production that had not been turned over. I believe that document production was turned over just prior to that July 19 pre-hearing order from the administrative judge. So the point is the May 19 order does state that pre-hearing submissions would be due on the 24th of July, but your point is that it didn't state what the contents of those submissions were to be. Correct, Your Honor, and if you look at the Board's regulations at 5 CFR 1201, there's no guidance on what goes into a pre-hearing submission. Every one of these administrative judges has the discretion to do their pre-hearing submissions as they choose. Some have very bare-bones pre-hearing submissions. Some have much more comprehensive. In this case, this was a very detailed pre-hearing order that set forth all the evidence and witnesses that need to be submitted. This coming off the tails of the agency producing a proverbial document dump on the appellant at that point in time that she was still sifting through. Now at this time she didn't have any – she was representing herself in these proceedings. Was she consulting at all with any counsel? Not to my knowledge, Your Honor. According to the proceedings below, she was pro se during that entire proceeding. As you can see right on the initial decision itself, she's indicated as pro se. That said, the administrative judge quickly denied Ms. Hiller's motion for a continuance, granting her an additional two days to get her pre-hearing submissions in, which she did. And her pre-hearing submissions were voluminous. I think they're approximately 28 pages. They provide a lot of the information that is requested by or required by the judge in his pre-hearing order, albeit not in a bulleted or summary fashion there. If you go through Ms. Hiller's pre-hearing submissions, she provides all the information necessary, including the names of the witnesses she would have called to testify, including the testimony they would have provided. She even goes so far to identify the car factors, which is the key issue at this point in time, whether the agency had proven by clear and convincing evidence its legitimate reasons there for reassigning her position. But she goes through and identifies these witnesses are going to testify to car factor number one. At this point, I just want to clarify one thing. At this point, were the parties aware that the sole issue before the administrative judge at the hearing was going to be whether the agency had established by clear and convincing evidence that it would have taken this action anyway? I don't think so. While the administrative did make a jurisdictional ruling finding that Ms. Hiller did establish a jurisdiction of the court below, which does cover the prima facie case of an IRA appeal, there was no stipulation filed saying that the only issue on appeal would be the agency's burden to establish by clear and convincing evidence. So the first time that was finally determined is in the AJ's decision? I believe so, Your Honor. There's nothing prior to that. Do I understand correctly that the administrative judge did grant some of the alternative relief that she requested by extending some of the deadlines until August 4th, but not extending others all the way to August 4th, only giving, I think, a two-day extension on, for example, the witness list? You're right, Your Honor. I believe the administrative judge granted her the opportunity to submit an exhibit list later on, but not addressing the witness list, albeit giving her two extra days to get that pre-hearing submission in, which she timely did, but yes, he did give her some additional time. Why didn't she provide the witness list on the date that was provided in the alternative relief granted? Your Honor, I think if we look at that pre-hearing submission, with Ms. Hiller not being an employment attorney, not having practiced before the Merit System Protection Board, and not understanding what the administrative judge may have necessarily required, she did not go down and do a bulleted or a numbered factor, these are my witnesses, these are my exhibits, things of that nature. She provided much more of a narrative statement as to all the evidence and facts, and I think had the judge assisted her in sifting through that, he could have easily discerned the witnesses that would have testified. If you look at the appendix, I believe it's 94 through 96, Ms. Hiller goes through and specifically highlights the testimonies of Ransom, Ressar, and Hamilton, who would have all testified to all three of the car factors. Each one of them was going to provide testimony that would have rebutted the agency's affirmative defense there. Unfortunately, the administrative judge didn't do that at all. What do you think about the pre-hearing submissions for this before the board is different than pre-hearing submissions before other tribunals? Are there going to be district courts or any other kind of tribunal? No, I appreciate that. Every court does have their own requirements as to what constitutes a pre-hearing. Doesn't it typically include a witness list and an exhibit list? You know, having not litigated, I predominantly practiced before the Merit Systems Protection Board and the EEOC. What about Ms. Hiller? Ms. Hiller is an immigration attorney. She was doing largely, at that time, she was providing largely teaching at Glinko, which is one of their academies where they treat law enforcement officers. She wasn't practicing routinely in district court, things of that nature. Yes, courts do typically require some form of pre-hearing submission, but as you can see from her pleadings, this is not something she was routinely involved with. And as her motions demonstrate and her pre-hearing submissions, she was trying to focus on the substance of the issues as opposed to some of these procedural issues and get the evidence in front of the judge. And that's where the abuse of discretion happened here. The judge didn't give her the opportunity to develop that record, and now we're all at a disadvantage to determine whether or not the agency can meet its burden to establish by clear and convincing evidence. Let me ask you one question, something I'm just scratching my head a little bit over. At page 733 of the appendix, we have, I guess, Ms. Hiller's prayer for relief and what she's asking for. Now, as I understand it, right now, there's been no loss of pay here. She's working, at least unless it's changed from what's in the record, she's in Charlotte with an attorney position with ICE. Is that correct? You know, I apologize. I don't know specifically where she is right now. Okay. But there's no claim for loss of pay or anything like this in this case. As I read what's at 733, she wants to be sent back either to Charleston or I think she mentioned Boston in an equivalent position. That's what's there. But it appears from the record that Charleston is no longer in operation in terms of what she was doing there. Assume for the moment we would agree with you. What is the exact relief that is being requested here? A new hearing or what? Because, I mean, in your brief, you just say remand to the board. But what exactly would you want to happen before the board if we agreed with you on appeal? So, and I see I'm running down on time here, but let me address that question. The remedy would be a remand and having a full adjudicated hearing at that point in time where she'd be provided the opportunity to call witnesses. The relief that would be recovered, you know, this is clearly a personnel action within the IRA. If Ms. Hiller were to prevail, she could file an addendum proceeding for compensatory damages as well. She could also provide a motion for attorney's fees and costs that she's, you know, incurred before this court and on the remand there. So there is certainly relief still to be had there. The fact that three years later this position had been drawn down, the division had been abolished, it certainly affects what those damages entail. But it doesn't affect whether or not there was a personnel action. And it doesn't affect whether or not she could still become a prevailing party for purposes of her IRA appeal. Thank you. Good morning. Good morning. May it please the court. Agency business needs, not whistleblowing, compelled ICE to eliminate the Charleston position and reassign Ms. Hiller to Charlotte in a litigating position. Can we talk about the witness list first? Yes. I mean, how do you respond to your friend's argument that even though she didn't have a specific witness list, her pre-hearing submissions that were timely clearly identified all the necessary witnesses? Well, the pre-hearing submission, the order from the administrative judge, Appendix 63 was pretty specific about the requirements. They wanted a list of the witnesses, a detailed summary, their location. And the reason why that was important is, well, there are two reasons. First, in the original pre-hearing conference order, the administrative judge specifically said that witness requests will be reviewed in detail and the facts and issues will be discussed. So there is a need to identify who are the potential witnesses who might speak and then to see, you know, is there a crossover between the two parties. And also, many of these witnesses were agency employees. So the agency personnel who is representing the agency in the board would need to know, who do we need to contact to bring them into this appeal? Who do we need to subpoena? Who do we need to help Ms. Hiller arrange for their testimony? And so by not providing that information in advance of the pre-hearing conference or in accordance with the extended deadline, Ms. Hiller deprived the administrative judge and the agency of the chance to go through that exercise. Importantly, Ms. Hiller's burden here is a very high one to show that the administrative judge abused his discretion. In the cases where the court found an abuse of discretion, such as Whitmore or even a board case such as, I believe it's Moore, there is an erroneous factual or legal assumption underlying the decision. In Whitmore, it was, what's the scope of the employee's burden to show? What does he need to show in order to present this affirmative defense? And because the administrative judge misunderstood or misapprehended his legal burden, she denied him the ability to call certain witnesses to testify about those decisions. But importantly, in Whitmore, when the administrative judge denied the appellant a certain witness because the appellant failed to identify that witness on the witness list, this court said that's entirely reasonable for the administrative judge to exclude that witness from the hearing. So in this case, there's no erroneous factual or legal assumption that's underlying the administrative judge's decision to grant partial relief on her extension motion. But at some point, a demand to do something within a really short time frame could rise to a level of abuse of discretion, no? Perhaps in a certain circumstance. In that sense, I don't have the specific timing. But if the case had been under suspension for a couple of years, the administrative judge decides I'm ready to hear this, give me everything tomorrow, that might be an abuse of discretion, right? I don't know. Particularly with a pro se employee. I understand that she's a lawyer, but I think we still have to treat her as we would any other pro se petitioner at the board. Of course, it would depend on the context in which that decision was rendered. So in a certain context, it might be an abuse of discretion. In a certain other context, it might not be an abuse of discretion. But in this context, the administrative judge did not abuse his discretion in granting partial relief on her continuance motion. The second point is even if this court were to agree that the administrative judge abused his discretion, Ms. Hiller must satisfy a second step, which is to show prejudice. And she also cannot show prejudice. The information that she would have provided goes to the part of the case that she won. She established her prima facie retaliation claim. The witness testimony that was offered as part of the record does not speak to any of the car factors, or at least with any personal knowledge. One of the witnesses would have to guess why her position was eliminated. It seemed funny to him. So your point is that because none of those people were the decision makers, their testimony was not relevant at all? Well, not to say it was relevant, but that's the general point. Your Honor has it exactly right. The actual decision makers testified. She cross-examined them. They were on the stand with her for about three hours during the course of a half-day hearing. So she had the opportunity to examine the witnesses who testified in support of the agency's defense. And finally, just on the merits. On the merits, the administrative judge examined all of the evidence and made factual findings. And Ms. Hiller has not identified any sort of clearly erroneous factual findings sufficient to disturb the administrative judge's decision on the merits. If the Court has no further questions, we respectfully request that the Court affirm. Thank you. Thank you. I specifically want to address that Whitmore decision because I think the Whitmore decision in the case that I referred to at the beginning of my argument is directly on point here. In Whitmore, the administrative judge denied the appellant the opportunity to call any witnesses with regards to that IRA appeal. The one witness that was denied was not relevant. It was coming in for character evidence. It wasn't even an agency employee. And that was all part of the judge's determination as to why not to call that decision, or that witness, I should say. More importantly, though, the Court in Whitmore highlights that whistleblowers, by their very nature, are at a severe disadvantage in proving their cases. IRA appeals are a very, very hard case to try and prove. And it is especially hard for this Court to review when the record has not been properly developed, as it was in Whitmore. And that's the exact same fact pattern we have here. Judge Stoll, you asked the question as to whether or not these witnesses' testimony would not be relevant. Their testimony would have been relevant. Their testimony would have specifically gone towards the car factors, the strength of the agency's reasoning, the motive behind that, and whether or not similarly situated employees were treated more favorably. How do you respond to the specific point that, at least for motivation, you should be looking at the decision-maker, and because they're not the decision-makers, it's not relevant? I disagree with that. I think, you know, in the work environment, so much gets developed between what other employees know and learn. When you look at the record itself, Hamilton would have testified that everybody in the office knew that they were out to get her. I believe it was Mr. Ransom who was expected to testify that she was, quote-unquote, a troublemaker, and management was specifically out to get her. Obviously management is not going to go in and testify that they believe Ms. Hiller was a troublemaker, that Mr. Cameron believed that, you know, they were going to retaliate against her. That never happens, and that's why IRA appeals are so difficult. We rarely have that direct evidence. And it's your view that the Administrative Judge's comment in his decision about acknowledging that she had this reputation in the office wasn't sufficient? No, because the judge is just scratching the surface. His decision as well acknowledges that. He acknowledges the email from one manager to another, Dobson to Knutson, where he specifically sends correspondence about Ms. Hiller's dozens or hundreds of complaints. I forget the exact verbiage. And then Mr. Knutson directly impacts the decision of Mr. Cameron, the ultimate deciding official there. I understand that, you know, we have to go through these management chains here and understanding what their rationale is, but the testimonies of Ransom and Ressar and Hamilton would have gone directly towards that motive and would have rebutted their legitimate reason of business needs. In our brief we talk about how the evidence directly contradicts this and the fact that these courses did not draw down for another period of two or three years, yet Ms. Hiller was the first on the chopping block. So all of that evidence should have been considered, and the problem we have is that the record was not properly developed. I do see I'm over my time. If there's any additional questions, I'm happy to answer. Thank you. Thank you very much, Your Honors.